## HUGH ALLEN AND WIFE v. ALLEN URQUHART.

In 1838 no particular ceremony or form was necessary, to make a valid sale by the husband and wife, of the wife's slaves ; a verbal sale, accompanied by delivery, with the wife's consent, was sufficient, if the sale was otherwise legal.

If it were admitted that to make sales of property of the wife binding upon her under the Spanish law, it was necessary to show that the price enured to her benefit, all that would be required would be to show that she received the proceeds of the sale ; the purchaser could not be held responsible for the subsequent management of the property ; and a receipt by the husband, with the wife's consent, would be a receipt by the wife, in the absence of proof of fraudulent collusion between the purchaser and the husband.

Although long acquiescence may not bar the claim of a married woman, yet where there is not ignorance of her right, and no evidence of actual constraint, it certainly does warrant an unfavorable inference as to the justice of her cause, and the defendant ought not to be required to produce as satisfactory evidence of the material facts, as might have been required had her action been brought without long delay.

Error from Cass. Tried below before the Hon. William W. Morris.

Suit by Hugh Allen and Caroline M. Allen, his wife, against Allen Urquhart, to recover three women slaves and their increase, or the survivors of them ; sequestration, &c. The women were from twenty to twenty-three years of age in

January, 1838, when Mrs. Allen received them by inheritance from her father. In the Spring of 1838, they were delivered to the defendant in pursuance of a sale, upon the validity of which, as against Mrs. Allen, this suit depended. Allen and wife resided at the time in Red River county, and continued to reside there until 1840, and then resided in what is now Upshur county, until 1845, when they moved to western Texas. There was no evidence that Urquhart had changed his place of residence.

Margaret Smith, plaintiffs' daughter, testified that slaves were taken off from the residence of Mrs. C. M. Allen, and went into the possession of the defendant ; that Hugh Allen, the husband of said C. M. Allen sent them away from the home of said C. M. Allen ; that the said C. M. Allen did not sell them ; that Hugh Allen sold them to defendant from said C. M. Allen, in the Spring of 1838, in Red River county ; witness was living with plaintiffs at the time.

Esquire Frazier, a brother of Mrs. C. M. Allen, stated that he had purchased the slaves from the plaintiffs in the Spring of 1838, but being unable to pay for them it was no sale ; that the defendant purchased them from Hugh Allen ; the slaves were at witness's house at the time ; defendant paid $1200 for them, to-wit ; $400 in cash, $400 in cattle and $400 in a note ; that $1200 was a fair price for the slaves at that time ; witness delivered the slaves to one Joseph Reed for defendant ; Mrs. Allen was not present when they were delivered ; the trade was made at Allen's house ; Mrs. Allen was at home ; that she did not assent nor dissent to the sale of the slaves.

Ebenezer Frazier, a witness for defendant, and brother of Mrs. Allen, had bought the slaves from Hugh Allen early in the year 1838, but before completing the trade, knowing they belonged to Mrs. Allen, he went to see her, and she objected to making the sale, unless he would pay in cattle or pay $1000 of the purchase money in cash, so that she might buy cattle,

and witness then declined the trade ; does not know that Urquhart paid to Allen cattle ; never saw any cattle of Allen's ; witness offered twenty cows and calves, which were worth at that time $20 each, $400 in cash, and his note for $400, payable in payments which Mrs. Allen declined. Cross-examined; stated that he did not know whether Mrs. Allen objected to the sale to Urquhart ; Urquhart was to pay $400 in cash, $400 in cows and calves, and $400 in note ; the family got the cattle ; witness never saw the cattle.

Mrs. Burress, a witness for defendant, had heard Mrs. Allen say she was very anxious that the sale should be made ; after the sale was made, witness heard her say that she was well satisfied with the sale, and gave as her reason this, that the slaves were calculated to ruin her children ; witness heard her say, pointing to one of the cows that they got from Allen Urquhart in payment of said slaves, she would not give that cow for the slaves, and take them and raise them up with her children ; witness heard Mr. and Mrs. Allen frequently speaking of the sale of these negro girls sold to defendant Urquhart, and witness heard Mrs. Allen say frequently that she was perfectly satisfied with the sale ; all witness ever heard Mrs. Allen say was after the sale was made ; she told witness that she was axious to sell them some time before they were sold.

The above was all the evidence, except as to the increase and value of the slaves.

Plaintiffs excepted to so much of the testimony of Mrs. Burress, as stated admissions of Mrs. Allen made after the sale, on the ground that they did not refer to any act of approval made before or at the time of the sale.

The Court charged the jury as follows :

If a married woman voluntarily assents or make admission or representation in respect to her rights of property by which another is deceived and induced to purchase her property, she will be precluded from asserting her claim to said property against the rights of him who had confided in and

Allen v. Urquhart.

acted on such admissions and representations by her; there-fore you will determine from the proof whether the defendant was, by the acts, admissions or representations of Mrs. Allen, induced to purchase the negroes in controversy. If so, she is estopped thereby from setting up title to said slaves, and it will be your duty to find for the defendant. This conclusion emanates from a familiar principle of law, that a party will not be permitted to influence the acts of another by acts or representations, and afterwards gainsay to her profit, in a Court of Justice, these admissions.

But if you find that Hugh Allen, without the consent or rat-ification of his wife, sold the negroes sued for, then such sale does not bar the rights of the wife, and it will be your duty to find for Mrs. Allen, the plaintiff, and the value of the hire of the negroes from the date of the suit. If you find for the plaintiff you will also assess the value of each negro separately according to the proof, and name the negroes which you find for plaintiff.

If you find that Mrs. Allen is not entitled to recover the ne-groes, you will find for the defendant.

The defendant requested the Court to charge the jury, that that if Mrs. Allen had ratified the sale, after it was made, and had expressed herself satisfied with the sale, she cannot recov-er in this action. This charge was refused; but the Court added the following to the general charge: Let the jury take into consideration what the wife said or did after the sale, in making up their verdict, as to whether the wife originally assented to or induced the sale.

Verdict and judgment for defendant. Motion for new trial overruled, &c.

*S. F. Moseley*, for plaintiffs in error.

*A. Morrill*, for defendant in error.

WHEELER, J. There can be little doubt that the sale of the slaves was made, not only with Mrs. Allen's entire approbation but at her instance. It is in proof that she had been in negotiation with others to effect a sale : she had expressed her wish to effect it ; and when it had been effected, expressed her satisfaction in the most decided manner ; assigning, at the same time, one of the strongest motives that could influence a mother, that the slaves were calculated to ruin her children. With such a motive, and the evidence of negotiations for a sale, so shortly after acquiring the property, it is not too much to assume that, as she stated to the witness, she was really anxious to effect it ; and that her anxiety influenced her conduct, and had the effect, in part, to bring about the sale. Her long acquiescence, knowing, as we must suppose she did, her rights, and having the assent of her husband to assert them, as shown by his joining in the suit and being personally active in sequestering the property, is strongly confirmatory of the evidence of her entire satisfaction with the sale. Of that there can be no doubt ; and there really can be as little, I apprehend, of her agency in bringing it about. That is sufficient to render it obligatory upon her if otherwise legal.

The plaintiffs, to show that it was not legal, it having been made when the Spanish law was in force, rely upon decisions of the Supreme Court of Louisiana upon the 61st law of Toro, providing against the wife becoming security for the husband, and providing what shall be necessary to render her liable where she contracts jointly with her husband. These decisions and others upon the same subject were reviewed by the Supreme Court of the United States in the case of Bein v. Heath, (6 Howard, 228,) and the Court there say, " that in many cases, as a matter of evidence to charge the wife, it may be necessary to prove that the loan was applied to her use, may be admitted. But under the above Article " (referring to an Article of the Code which the Louisiana Court had held not

to have changed the law) "we think that such evidence cannot be required as a matter of law." The provision of the Spanish law, more particularly applicable to this case is that which relates to sales ; which declares that " if the separate property of the wife shall be sold during marriage, with the consent of both consorts, the wife cannot require compensation, or reimbursement, if the purchase money shall have gone to her benefit, and for articles which the husband was not bound to furnish her. But if the price has not been converted to her benefit, she will have the right to reimbursement, which must be taken from the community property if there be any, if not, then from the property of the husband." Escriche Dicc. *Verbo* BIENES ESTRADOTALES ; and see 1 White, Rec. 56.) If the sale was without the consent of the wife, she will have her action or remedy against the purchaser. (Id.) It seems therefore, by the law of Spain, that if the property of the wife has been sold with her consent, she cannot recover back the property from the purchaser ; but must have her recourse upon the community property, or the separate property of the husband. Here there can be no doubt the sale was with the consent of the wife ; and that, it would seem, must defeat her right to maintain the present action.

But if it be admitted that the principle of the law invoked by counsel is applicable to this case ; and it devolved on the defendant to prove that the sale enured to the benefit of the wife, it cannot be said in this case, as was said by the Supreme Court of Louisiana in deciding the case of Brandegu v. Kerr and wife, (cited from 7 Martin, N. S. 64,) that " there is no fact in evidence from which it is possible to infer that the plaintiff's" (here the defendants') " money was employed for the separate use of the wife ; " and to authorize us hence to " conclude that the wife is not bound." The reverse, we think, is the fair deduction from the evidence. The proof is that Mrs. Allen wished {to purchase cattle ; and that she at one time required the payment of a thousand dollars in money to

enable her to accomplish that favorite object. It could not have been that such a purchase was designed for family use and consumption. The object must have been to obtain productive property, from which she might derive profit. It is in proof that a considerable if not the greater portion of the price of the slaves was paid in, or converted into property of the kind she wished. It became, of course, her separate property; as completely and absolutely so as the slaves had been, and equally subject to her power of disposition. The presumption is, that she enjoyed the full benefit of it; there is no evidence to warrant a contrary supposition; there is no proof that the husband was not able to provide or that he did not provide all suitable necessaries for his wife and family out of his own or the common property. There is nothing in the evidence from which it can be inferred that the property was appropriated to uses for which it was the duty of the husband to provide, or that the purchase did not enure ultimately to the sole separate use and benefit of the wife. But all that it concerned the defendant to show was, that it enured to her benefit at the time; that she received the proceeds of the sale. He could not be held responsible for the subsequent management of the property. He had no concern with the disposition she might see fit to make of it. Nor was it necessary that she should have had the better of the bargain. That is not the meaning of the law. It only required that she should have received the benefits thence derived; and that is all that concerns the defendant, or that he could be required to show. That the sale was for her benefit is the only inference which can be fairly deduced from the evidence. She certainly so regarded it; and rightly, if her apprehensions of the influence the slaves were likely to have upon her children were well founded. Of that she had the right to judge, and probably no one knew better than herself. It was a matter certainly of not less interest and concern to her than to her husband. She had an equal right to dispose of, and even sacrifice property, if neces-

Allen v. Urquhart.

sary for such an object ; and her power of free disposition, where such a |motive is shown, ought to be supported. But apart from that consideration, she obtained for the slaves property which it seemed to have been a favorite object with her to acquire ; and the sale was therefore to her advantage in the fullest sense of the rule. The evidence was therefore sufficient to support the sale ; especially as it was made evidently with her sanction and for her benefit. To the objection now urged to the admissibility of evidence, that a proper foundation for it was not laid in the pleadings, it will suffice to answer, that was not the objection taken in the Court below. The objection there taken was a very different one, and one which clearly was not tenable.

The law of the charge of the Court is well supported by the authority of Bein v. Heath, and the decisions of this Court to the same effect. (8 Tex. R. 243 ; 11 Id. 477.) The only question of doubt is whether it was warranted by the evidence ; and we cannot say that it so clearly was not, as to warrant a reversal of the judgment, under the circumstances of this case. After such a lapse of time, it must be difficult, if not impossible to prove the facts of the case, with positive distinctness and certainty. The defendant ought not in reason to be held to the same strictness of proof as if the transaction were recent. Nor ought the plaintiffs to derive an advantage from their long acquiescence. Though it does not bar their right, it certainly does warrant an unfavorable inference as to the justice of their cause. Under the circumstances the defendant could not be expected, and ought not to be required to produce as satisfactory evidence of the wife's agency in effecting the sale and inducing the purchase, or of its advantage to herself, as might have been required under other circumstances. On the whole we conclude that the judgment is right and it is therefore affirmed.

Judgment affirmed.